No. 2--01--0777

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Du Page County.

)

Plaintiff-Appellee, )

)

v. ) No. 00--CF--2213

)

ANTHONY R. JONES, ) Honorable

) Ann Brackley Jorgensen,

Defendant-Appellant.  ) Judge, Presiding.

_________________________________________________________________

JUSTICE CALLUM delivered the opinion of the court:

Following a jury trial, defendant, Anthony R. Jones, was convicted of, 
inter alia
, aggravated unlawful use of a weapon (720 ILCS 5/24--1.6(a)(1), (a)(3)(C) (West 2000)).  He was sentenced to four years' imprisonment.  He appeals, arguing that (1) the trial court erred in denying his pretrial motion to suppress a statement; (2) the prosecutor's closing argument improperly highlighted defendant's failure to testify; (3) the court erred in admitting irrelevant evidence and evidence of unrelated criminal activity; and (4) defendant was not proved guilty beyond a reasonable doubt.  We affirm.

I. FACTS

Defendant was charged with driving while his license was suspended (625 ILCS 5/6--303(a) (West 2000)), two counts of unlawful use of a weapon by a felon (720 ILCS 5/24--1.1(a) (West 2000)), and two counts of aggravated unlawful use of a weapon.  

In his motion to suppress, defendant alleged as follows.  On August 28, 2000, he was arrested for driving while his license was suspended.  He was handcuffed and placed in a police car as the police searched the vehicle that he was driving.  The police found a loaded handgun in the glove box.  An officer told defendant that he had found a handgun in the vehicle, and defendant replied, "Why did you go into the locked glove box?"  Defendant's statement was the product of a custodial interrogation.  Because defendant had not received 
Miranda
 warnings (see 
Miranda v. Arizona
, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)), his statement required suppression. 

At a hearing on the motion, the only witness was William Greenaberg, a Darien police officer.  He testified that on August 28, 2000, about 2:42 a.m., he saw a white Ford Probe lacking a rear registration.  He effected a traffic stop, and defendant, the driver, was alone in the Probe.  Greenaberg asked defendant to produce his driver's license and insurance card.  Defendant "shuffled some papers that were on the passenger's seat" and said that he could not find them.  Defendant gave his name, and Greenaberg found that his license was suspended.  Greenaberg arrested defendant and told him that his car would be towed.  Defendant "asked numerous times to keep the keys to the car" and said that he could have someone pick it up.  Greenaberg rejected that option, handcuffed defendant, and placed him in the back of his squad car.

Greenaberg testified that he and an Officer Foster inventoried the Probe.  Foster used the ignition key to unlock the glove box and found a loaded handgun therein.  Under the gun was a receipt dated August 19, 2000, with defendant's name.  Greenaberg told defendant that he had "located a handgun in the car."  Greenaberg's purpose in so stating was simply to advise defendant of what he had found.  In response, defendant asked why Greenaberg "went into a locked glove box without a search warrant."  At no point was defendant advised of his 
Miranda
 rights.

The court ruled that, although defendant was in custody, Greenaberg's statement that he had found a gun was not interrogative.  Thus, despite the absence of 
Miranda
 warnings, the court determined that defendant's response was admissible.

At trial, the State first called Greenaberg, who testified as he did at the motion hearing but added the following details.  He took five seconds to stop his vehicle and walk to the side of the Probe.  As he approached, he did not lose sight of defendant's head and did not detect any movement.  He could not see the glove box.  When he got to the side of the Probe, defendant's belt was unfastened and his pants were unbuttoned and unzipped.  The key was in the ignition, but the vehicle's engine was off.  When Greenaberg asked for defendant's license and insurance card, defendant said that the insurance card would be with Vince Williams, the owner of the car.  Williams' name was on a valid temporary registration on the windshield.  In looking for his license, defendant did not open the glove box.  When Foster first saw the gun, nothing was on top of it.  The barrel of the gun was pointing at the passenger side of the car, and the grip was pointing at the passenger seat.  No fingerprints were found on the gun.  The glove box was not checked for prints.

The State next called Mark Reid, who testified that he was in the narcotics unit of the Joliet police department.  At a sidebar, defendant objected, asserting that Reid's testimony was irrelevant and would "raise a suspicion of additional crimes."  The court overruled the objection.  Reid testified as follows.  On November 8, 2000, he and other officers were at a Joliet residence.  Defendant was one of two adults in the house.  Outside the house were a Cadillac and a white Ford Probe.  In a bedroom, Reid found defendant's Illinois identification card and a set of keys.

Patrick Cardwell, a Joliet police officer, testified that he was at the residence with Reid and 5 to 10 other officers.  Defendant moved for a mistrial, which the court denied.  Cardwell testified that Reid gave him the keys from the bedroom and that Cardwell used one to access the Probe, which was going to be towed.  None of the keys accessed the Cadillac.  Cardwell had gotten permission to search both vehicles, but it was not defendant who consented to a search of the Probe.  Defendant said that Williams owned the Cadillac but did not say who owned the Probe.

The parties stipulated that defendant had been convicted of a felony and had never been issued a firearm owner's identification card.  The State rested, and the court denied defendant's motion for a directed verdict.  Defendant presented no evidence.

The court instructed the jury.  During his closing argument, the prosecutor made six references to the evidence as "uncontradicted" or "uncontroverted."  The prosecutor then argued:

"[T]he important thing that was found in the glove box which shows that the defendant had access to it, and control over it, *** is the personal papers inside the glove box for the defendant ***.  It is uncontradicted."

Defendant objected, asserting that the State was trying to shift the burden of proof "by constantly referring to that."  The court overruled the objection, noting that the jury had been instructed on the burden of proof.

The jury found defendant guilty as charged.  The court assessed costs for the traffic offense and merged the remaining offenses into one count of aggravated unlawful use of a weapon, imposing a four-year prison term for that offense.  The court denied defendant's motions for a new trial and for reconsideration of his sentence, and he appealed.

II. 
MIRANDA

First, defendant argues that the trial court erred in denying his motion to suppress.  He asserts that his question to Greenaberg as to why he "went into a locked glove box" was obtained in violation of 
Miranda
.  We disagree.

Our review of a ruling on a motion to suppress consists of two steps.  First, we reverse the trial court's factual findings only if they are against the manifest weight of the evidence.  Here, the evidence is undisputed, so we may simply proceed to the second step, in which we review 
de novo
 the ultimate question of the defendant's legal challenge to the denial of his motion.  See 
People v. Sorenson
, 196 Ill. 2d 425, 431 (2001).

It is well established that, if a suspect does not receive 
Miranda
 warnings, any statements that he makes during a custodial interrogation may not be admitted.  
People v. Manning
, 182 Ill. 2d 193, 206 (1998).  Here, it is undisputed that defendant made his statement in custody and without 
Miranda
 warnings.  Thus, the issue is whether Greenaberg interrogated defendant by advising him that  he had "located a handgun in the car."

Under 
Miranda
, an "interrogation" refers both to express questioning and to any words or actions, other than those normally accompanying arrest and custody, that the police should know are reasonably likely to elicit an incriminating response.  
People v. Olivera
, 164 Ill. 2d 382, 391-92 (1995).  Although Greenaberg testified that he had no intent to elicit such a response, our primary focus is on defendant's perceptions, not Greenaberg's intent.  See 
Olivera
, 164 Ill. 2d at 392.

Each party relies on an Illinois case that is clearly distinguishable.  Defendant cites 
People v. Burson
, 90 Ill. App. 3d 206 (1980), in which an officer saw the defendant driving when the officer knew that the defendant's license was revoked.  After the defendant parked, the officer told him to enter his squad car.  The defendant complied, and the officer said, " 'Now, Jerry, you know better than to drive that car.' "  
Burson
, 90 Ill. App. 3d at 208.  The defendant replied, " 'Yes, I know but can't you give me a break?' "  
Burson
, 90 Ill. App. 3d at 208.  The officer arrested the defendant for driving while his license was revoked.  The appellate court determined that the officer's question was interrogative, as it "posited the guilt of the defendant as fact while attempting to elicit comments directed toward why the defendant committed the act."  
Burson
, 90 Ill. App. 3d at 210.

The State relies on 
People v. Clark
, 186 Ill. App. 3d 109 (1989), in which two officers arrested the defendant for disorderly conduct.  One of the officers conducted a protective search and found a handgun in the defendant's pocket.  The officer showed the gun to his partner and said, " 'Look at this.' "  
Clark
, 186 Ill. App. 3d at 111.  The defendant responded, " 'I need that for the gangbangers.' "  
Clark
, 186 Ill. App. 3d at 111.  The defendant was arrested for unlawful use of a weapon.  The appellate court held that "the officer's spontaneous response to the discovery of a weapon" did not constitute an interrogation.  
Clark
, 186 Ill. App. 3d at 113.

This case falls squarely between the extremes of 
Burson
 and 
Clark
.  Here, Greenaberg merely informed defendant of what he had found in the vehicle.  He did not posit defendant's guilt and invite an explanation, as in 
Burson
.  However, because Greenaberg  had to travel from the Probe to his squad car to convey the information, his statement to defendant was not a spontaneous response to his discovery, as in 
Clark
.

In the absence of applicable Illinois authority, we have looked to other jurisdictions and discovered a case that is substantially identical.  In 
United States v. Payne
, 954 F.2d 199 (4
th Cir. 1992), the defendant was arrested for selling cocaine.  He was advised of his 
Miranda
 rights, which he invoked.  Three  agents of the Federal Bureau of Investigation, including Martin, accompanied the defendant as he was driven to the point where he would be turned over to the United States Marshals Service.  En route, Martin received a call from an agent who had executed a warrant to search the defendant's residence.  Martin told the defendant, " 'They found a gun at your house.' "  
Payne
, 954 F.2d at 201.  The defendant responded, " 'I just had it for my protection.' "  
Payne
, 954 F.2d at 201.  The defendant was charged with a weapons offense.

The defendant argued that Martin's statement was interrogative.  The United States Court of Appeals, Fourth Circuit, disagreed:

"As the district court found, Agent Martin's statement 'was not one that sought or required a response.'  Officers 'surely cannot be held accountable for the unforeseeable results of their words or actions,' [citation] and we cannot conclude that Agent Martin 'should have known' that her statement, which was the only discussion of the charges or evidence against [the defendant], was 'reasonably likely to elicit an incriminating response.'  [Citation.]  Moreover, [the defendant] 'was not subjected to compelling influences, psychological ploys, or direct questioning.'  [Citation.]  Thus, *** the rather innocuous statement at issue here did not constitute interrogation ***."  
Payne
, 954 F.2d at 203.

Other circuits, including the Seventh Circuit, have indicated their agreement with 
Payne
.  See, 
e.g.
, 
United States v. Conley
, 156 F.3d 78, 83 (1st Cir. 1998);
 
United States v. Jackson
, 189 F.3d 502, 510 (7th Cir. 1999); 
United States v. Moreno-Flores
, 33 F.3d 1164, 1169 (9th Cir. 1994).  None has disagreed.

In accordance with this weight of authority, we too follow 
Payne
.  Greenaberg's statement was purely informational.  We cannot determine that Greenaberg should have known that the statement was reasonably likely to elicit an incriminating response, as the statement did not seek or require a response at all.  Thus, the statement was not interrogative, and the trial court properly denied defendant's motion to suppress.

III. THE PROSECUTOR'S CLOSING ARGUMENT

Defendant argues that, in repeatedly referring to the evidence as "uncontradicted" or "uncontroverted," the prosecutor impermissibly drew attention to defendant's failure to testify.  We disagree.

A criminal defendant has a constitutional right not to testify.  Thus, the prosecutor may not comment directly or indirectly on the defendant's failure to testify.  
People v. Kliner
, 185 Ill. 2d 81, 156 (1998).  That said, the supreme court has determined:

"[T]he State may comment that evidence is uncontradicted and may do so even if the defendant was the only person who could have provided contrary proof.  [Citation.]  To put it differently, the State is free to point out what evidence was uncontradicted so long as it expresses no thought about who specifically--meaning the defendant--could have done the contradicting.  See, 
e.g.
, 
People v. Wollenberg
 (1967), 37 Ill. 2d 480, 487-88 (involving the comment, '[n]o one else testified')."  
People v. Keene
, 169 Ill. 2d 1, 21 (1995).

The trial court has discretion to determine the character, scope, and prejudicial effect of closing arguments, and improper remarks warrant reversal only if they cause the defendant substantial prejudice.  
Kliner
, 185 Ill. 2d at 151-52.

Here, as in 
Keene
, the State "kept its remarks to the 'what' of the evidence uncontradicted."  
Keene
, 169 Ill. 2d at 22.  The prosecutor's final reference, which elicited defendant's cumulative objection, was typical.  The prosecutor simply stated that it was uncontradicted that the glove box contained defendant's "personal papers."  He "did not stray into the 'who' of the issue."  
Keene
, 169 Ill. 2d at 23.  Thus, defendant's argument fails.

IV. IMPROPER EVIDENCE

Defendant argues that the trial court erred in admitting Reid's and Cardwell's testimony.  Specifically, he asserts that (1) the testimony connecting defendant to the Probe in November was irrelevant; and (2) the testimony about the circumstances of the officers' presence at the residence injected evidence of another crime.

A. Relevance

Evidence is relevant if it has any tendency to make more or less probable the existence of any material fact.  We may reverse a trial court's determination of relevance only if the court abused its discretion.  
People v. Morgan
, 197 Ill. 2d 404, 455 (2001).  

Defendant contends that the testimony suggesting that he possessed a key to the Probe in November was irrelevant to the fact in dispute: "defendant's alleged knowledge of the presence of a weapon in the locked glove box 
at the time of the arrest
."  (Emphasis in original.)  However, the trial court did not err in deeming the testimony relevant to that issue.

Defendant's theory was that he did not know what was in the glove box because he did not own the car.  That theory could succeed, however, only if defendant also was not a regular driver of the car.  When Reid and Cardwell raised the inference that defendant retained a key to the car in November, they made it much more probable that defendant was a regular driver of the car and thus was aware of what it contained in August.  Thus, the trial court did not abuse its discretion in admitting this evidence.

B. Other Crimes

Evidence of other crimes is admissible for any purpose other than to show a defendant's propensity to commit a crime, and only if its probative value outweighs the risk of unfair prejudice.  Again, we may reverse the trial court's ruling on the admissibility of such evidence only if the court abused its discretion.  
People v. Tolbert
, 323 Ill. App. 3d 793, 796-97 (2001).

Defendant contends that, when Reid testified that he was a narcotics officer who searched a bedroom and when Cardwell testified that 5 to 10 officers were at the residence, the State "strongly suggested that [defendant] was involved in criminal drug activity."  We agree.

The State does not submit a legitimate purpose for this evidence, but it asserts that the evidence did not show a propensity to commit a crime.  It first claims that "[t]he simple fact that one of the officers was in the narcotics unit is insufficient for the jury to conclude that the officers were there to investigate drug activity."  We deem that claim disingenuous.  When a narcotics officer conducts a search of a residence, the clear inference is that he is searching for evidence of a narcotics offense.

The State further asserts that, because the officers did not testify that they actually found such evidence or that defendant was arrested, "the jury could have reasonably been left with the impression that the officers found nothing relating to criminal activity at the house or even that the officers searched the wrong house."  We deem that unlikely, but the State misses the point.  No matter what the officers found, the evidence strongly implied that defendant had at least a propensity to commit a crime.  Thus, as the evidence had no legitimate purpose, the trial court erred in admitting it.  Nevertheless, we determine that the error is not reversible because, as we will explain, the evidence of defendant's guilt is overwhelming.  See 
People v. Reid
, 179 Ill. 2d 297, 314 (1997) ("Evidentiary errors are harmless if properly admitted evidence overwhelmingly supports defendant's guilt").

V. SUFFICIENCY OF THE EVIDENCE

Defendant challenges the evidence of his four original weapons convictions.  However, because those convictions merged into one conviction of aggravated unlawful use of a weapon, we need address only the evidence of that offense.  See 
People v. Kargol
, 219 Ill. App. 3d 66, 75 (1991) (merger results in vacation of merged convictions).

In evaluating an attack on the sufficiency of the evidence, we do not retry the case.  
People v. Collins
, 106 Ill. 2d 237, 261 (1985).  Instead, we defer to the jury's determinations of the credibility of the witnesses, the weight of their testimony, and the reasonable inferences from the evidence.  
People v. Steidl
, 142 Ill. 2d 204, 226 (1991).  We must deem the evidence sufficient if, viewing it in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Perez
, 189 Ill. 2d 254, 265-66 (2000).

As we noted, defendant was ultimately convicted of only one count of aggravated unlawful use of a weapon.  As that crime was charged, the element in dispute was that defendant "knowingly" carried a firearm in a vehicle.  720 ILCS 5/24--1.6(a)(1) (West 2000).  Defendant's specific contention is that the evidence did not establish that he knew of the handgun in the glove box.  However, as we indicated above, we find that evidence overwhelming.

The evidence was undisputed, and the jury had no basis to disregard it.  See 
People v. Bavas
, 251 Ill. App. 3d 720, 723 (1993) ("The circumstances under which the trier of fact may disregard uncontradicted and unimpeached testimony are severely limited").  In looking for his driver's license and insurance card, defendant did not open the glove box.  The vehicle's engine was off, and defendant repeatedly resisted giving Greenaberg the key.  That key was used to open the glove box, and therein the handgun was resting uncovered atop a receipt bearing defendant's name.  Greenaberg told defendant that he had found a gun, and defendant replied by asking why the officer had opened the glove box.

Defendant's knowledge of the gun was strongly suggested by  his avoidance of the glove box, his withholding of the key, and the presence of the gun atop defendant's receipt.  Most damagingly, however, defendant 
admitted
 to Greenaberg that he knew the location of the gun.  In sum, this evidence was not only sufficient to establish defendant's guilt; by any definition, it was overwhelming.

VI. CONCLUSION

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

HUTCHINSON, P.J., and McLAREN, J., concur.