No. 2--07--0316          Filed: 7-1-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE VILLAGE OF KILDEER, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellee, | ) | |
| | ) | Nos. 06--TR--168180 |
| | ) | 06--TR--168182 |
| v. | ) | 06--TR--168184 |
| | ) | |
| TERRY R. MUNYER, | ) | Honorable |
| | ) | George D. Strickland, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

The defendant, Terry R. Munyer, was charged in three separate cases with reckless driving (625 ILCS 5/11--503 (West 2004)). The defendant agreed to be tried on all three charges at a single bench trial. After the Village of Kildeer presented its evidence, the defendant moved for a directed finding. The trial court granted the defendant's motion with respect to two of the cases but sua sponte ruled that it was going to consider the evidence presented on those charges as evidence of the defendant's motive and intent on the remaining charge. Following the presentation of the defendant's evidence, the trial court found the defendant guilty of reckless driving and sentenced him to one year of conditional discharge, plus fines and costs. On appeal, the defendant argues that (1) it was error for the trial court to admit the other-crimes evidence sua sponte; (2) the admission of the other-crimes evidence was improper; and (3) he was not proven guilty beyond a reasonable doubt of reckless driving. For the reasons that follow, we reverse and remand for a new trial.

I. Background

The defendant was charged with reckless driving (625 ILCS 5/11--503 (West 2004)) in three separate cases. In case No. 06--TR--168184, the defendant was charged with reckless driving against Ellen Filley and Amy McAuley on September 18, 2006 (the September 18 case). In case No. 06--TR--168182, the defendant was charged with reckless driving against Todd Williams on October 7, 2006 (the October 7 case). In case No. 06--TR--168180, the defendant was charged with reckless driving against Kaitlin Williams on October 9, 2006 (the October 9 case).[1] The parties agreed that, although the three incidents occurred on different days and involved different witnesses, the court would hear all three cases together.

A bench trial took place on December 20, 2006. According to the bystander's report, the following facts were adduced at trial. Todd Williams testified that on October 7, 2006, at approximately 3:15 p.m., he was driving his vehicle on Oak Ridge Lane when the defendant, who was driving a red truck, approached his vehicle from the opposite direction. The defendant swerved his truck toward Williams' vehicle, forcing Williams to leave the road to avoid being struck by the defendant's truck. Williams did not call the police. There had been bad feelings between himself

---

[1]The bystander's report states that "Case number 06 TR 168180 charged the Defendant with Reckless Driving on October 19, 2006 against the Complainant Kaitlin Williams." However, all of the testimony with respect to this incident indicates that it occurred on October 9, 2006. (Although the bystander's report states that copies of the complaints are attached, they are not in the record.) Therefore, we will assume that the October 19, 2006, date is a typo and that the incident took place on October 9, 2006.

and the defendant for some time, and he believed that there were problems between the defendant and other people in the neighborhood.

Kaitlin Williams, Todd Williams' daughter, testified that she was 16 years old. On October 9, 2006, at approximately 10 a.m., she was driving the family car east on Pheasant Hill Road, which is a neighborhood road with no center line, when she saw the defendant approaching her from the west in a Cadillac Escalade. The defendant's son was in his vehicle. The defendant's vehicle was partially on Kaitlin's side of the road, causing her to steer off the road to avoid being struck by the defendant. Two of her vehicle's wheels left the road. There was no contact between the two vehicles.

Ellen Filley and Amy McAuley testified to an incident that allegedly occurred on September 18, 2006, at approximately 11:30 a.m. Both testified that they live in the same neighborhood as the defendant and the Williamses. On September 18, Filley and McAuley were driving their vans toward each other near the intersection of Oak Ridge Lane and Pheasant Hill Road, and they stopped at the intersection to talk. While stopped at the intersection, with the open driver-side windows of their vehicles next to each other, they saw the defendant drive his vehicle in their direction. They did not move. They thought the defendant was going to strike their vehicles, but he pulled his vehicle away at the last minute to avoid striking them. The defendant's vehicle left the road to avoid striking them.

Thereafter, the prosecution rested. The defendant moved for a directed finding in each case, arguing that the evidence was insufficient and that the complaints were inadequate for failing to give factual descriptions of the alleged acts sufficient to support the charges. On the latter ground, the court granted the defendant's motion with respect to the October 7 case and the October 9 case.

Nevertheless, the court stated that it would consider the testimony in those cases in determining whether the defendant was guilty in the September 18 case. Defense counsel asked the court on what legal basis it was doing so. The court stated that it would consider the evidence in regard to the defendant's motive and intent.

The defendant testified that he was a self-employed contractor and that he lived in the same neighborhood as the prosecution witnesses. The defendant denied committing any of the alleged acts. With respect to the September 18 case, the defendant testified that on September 18, 2006, from 11 a.m. to 12:15 p.m., he was repairing shelves at the Toma-Rosa restaurant in Arlington Heights. The defendant submitted a work order in support of his testimony. Prior to leaving the restaurant, the defendant ordered a sandwich to take with him. The defendant submitted a receipt for payment showing a time stamp of 12:16 p.m. The restaurant is approximately 10 miles from his neighborhood, and it is about a 20-minute drive away. The defendant testified that he was not at the intersection of Oak Ridge Lane and Pheasant Hill Road at 11:30 a.m.

With respect to the October 7 case, the defendant testified that on October 7, 2006, he was working at the home of John Nerlinger in Arlington Heights between the hours of 1 and 4 p.m. When he finished the job, he drove home, arriving at approximately 5 p.m. He was not on Oak Ridge Lane at 3:15 p.m., and he did not commit any of the acts alleged by Todd Williams.

With respect to the October 9 case, the defendant testified that on October 9, 2006, he left his house at 9 a.m. with his son, and they went to breakfast at Alemar's Restaurant in Arlington Heights. The defendant was driving a red truck. They finished breakfast shortly before 10 a.m., and they proceeded to the Arlington Coin and Card Shop, where the defendant purchased two coins. The defendant submitted a receipt from the Arlington Coin and Card Shop. The defendant and his son

left the store at approximately 11 a.m. The defendant was not in the area of the alleged incident at 10 a.m., and he never forced Kaitlin Williams' vehicle off the road.

Tommy Munyer, the defendant's son, testified that he was 10 years old. He was with the defendant on October 9, 2006, because it was a school holiday. They went to breakfast and then to a coin store, where the defendant purchased two coins. They rode in the defendant's red truck, and they returned home around 11 a.m. He never saw the defendant force anyone off the road.

Rose McCarthy testified that she owned the Toma-Rosa Restaurant. On September 18, 2006, the defendant worked at the restaurant from 11 a.m. to 12:15 p.m. Before leaving, the defendant ordered a hamburger to take with him. The work order and the food receipt submitted by the defendant were true and accurate copies of the bill for the work performed and the receipt for the food ordered on September 18, 2006.

Frank Starkey testified that he owned the Arlington Coin and Card Shop. He was present on October 9, 2006, when the defendant and his son came into the store. He knew the defendant and his son from previous visits to the store. They arrived at approximately 10 a.m. and stayed for about half an hour. While there, the defendant purchased coins. The receipt submitted by the defendant was a true and accurate copy of the receipt Starkey wrote for the coins. When the defendant and his son left the store, Starkey saw them enter a red pickup truck.

John Nerlinger testified that he hired the defendant to do some repairs at his home. On October 7, 2006, the defendant arrived at his house at approximately 1 p.m. and stayed until 4:30 p.m. The defendant was at his house at 3:15 p.m. that day.

The trial court found the defendant guilty of reckless driving, and it sentenced the defendant to one year of conditional discharge with driving school, plus fines and costs. The defendant moved

for a new trial, arguing that the court erred in considering the evidence presented on the October 7 and October 9 cases. The defendant also argued that the evidence was insufficient to find him guilty. In support of this argument, the defendant attached photos of the street where the alleged incident occurred. The defendant argued, based on the photos and the fact that Filley and McAuley were blocking the entire road with their vehicles, that the defendant had to leave the road to avoid a collision. Following the denial of his motion for a new trial, the defendant timely appealed.

## II. Discussion

### A. Admission of Other-Crimes Evidence

We first address the defendant's contention that the admission of the other-crimes evidence was improper. Evidence of other crimes is admissible if its probative value outweighs the risk of unfair prejudice to the defendant. People v. Gwinn, 366 Ill. App. 3d 501, 515 (2006). Other-crimes evidence is admissible to prove any material fact relevant to the case (People v. Donoho, 204 Ill. 2d 159, 170 (2003)), but it is inadmissible if it is relevant only to demonstrate a defendant's propensity to engage in criminal activity (People v. Hendricks, 137 Ill. 2d 31, 52 (1990)). Such evidence may be admissible when it is relevant to show, among other things, motive, intent, identity, absence of mistake or accident, modus operandi, or the existence of a common plan or design. People v. Wilson, 214 Ill. 2d 127, 135-36 (2005).

" '[B]efore such evidence is admitted, the State must first show that a crime took place and that the defendant committed it or participated in its commission.' " (Emphasis omitted.) Gwinn, 366 Ill. App. 3d at 515, quoting People v. Thingvold, 145 Ill. 2d 441, 455 (1991). "Proof that the defendant committed the crime, or participated in its commission, need not be beyond a reasonable doubt, but it must be more than a mere suspicion." Gwinn, 366 Ill. App. 3d at 515; see also People

v. Bedoya, 325 Ill. App. 3d 926, 938 (2001) (the standard for admissibility of other-crimes evidence has not been clearly established in Illinois; it is more than mere suspicion, but less than beyond a reasonable doubt); People v. Osborn, 53 Ill. App. 3d 312, 322 (1977) (noting that "acquittal of the prior offense does not necessarily render evidence thereof incompetent," the court allowed a witness to testify about the details of an attempted rape committed against her by the defendant, even though after a preliminary hearing the attempted rape charge was dismissed for no probable cause). In addition, "if another crime has a tendency to make the existence of a fact of consequence to the determination of the case more probable than it would be without that evidence, then it is relevant and admissible regardless of whether the other crime occurred before or after the crime charged." People v. Kimbrough, 138 Ill. App. 3d 481, 489 (1985); see also People v. Bartall, 98 Ill. 2d 294, 312-14 (1983).

The other-crimes evidence in this case was relevant to demonstrate the defendant's intent to commit the charged offense. To prove that the defendant committed reckless driving, the State had to show that the defendant drove his "vehicle with a willful or wanton disregard for the safety of persons or property." 625 ILCS 5/11--503(a)(1) (West 2006). Thus, reckless driving requires proof of a willful or wanton mental state. People v. Paarlberg, 243 Ill. App. 3d 731, 735 (1993). In Paarlberg, the Third District broke down reckless driving cases into three categories: (1) cases involving "the commission of multiple traffic offenses which together demonstrate the driver's willful and wanton disregard for the safety of persons and property"; (2) cases involving "a driver's conscious disregard for the particular surroundings and circumstances that rises to the level of willfulness and wantonness"; and (3) cases "where willful and wanton conduct is based, in part, upon the driver's intoxication." Paarlberg, 243 Ill. App. 3d at 735-36 (and cases cited therein). In this

case, the first and third categories are inapplicable--there was no evidence that the defendant committed multiple traffic offenses or was impaired on September 18. This leaves the second category of cases. According to the defendant, "[i]t would be a stretch for the court to find that Defendant's acts were willful and wanton with a conscious disregard to the safety of others."

It is true that the required mental state is often implied by the manner in which a defendant operated his vehicle. See People v. Stropoli, 146 Ill. App. 3d 667, 671 (1986) (evidence that the defendant rapidly backed his vehicle six car lengths for no apparent reason and then made a wide turn around the corner at a fast rate, causing the car to fishtail and point momentarily toward a 3½-year-old child before straightening out, was sufficient to prove reckless driving); People v. Tuell, 97 Ill. App. 3d 849, 852-53 (1981) (evidence that the defendant accelerated from a stop and drove in the center of a two-way street toward a pedestrian, forcing her to run out of the way, was sufficient to prove willful disregard for the pedestrian's safety). Here, we might agree with the defendant that his alleged driving on September 18, by itself, was not so outrageous as to imply criminal intent. However, the evidence that on October 7 and October 9 the defendant drove his vehicle toward oncoming vehicles, causing those drivers to swerve off the road to avoid being hit, was relevant to establish the defendant's mental state as to the September 18 case. See People v. Jones, 337 Ill. App. 3d 546, 554 (2003) (evidence is relevant if it makes more probable any material fact). Although the defendant was not convicted in the October 7 and October 9 cases, the evidence that the defendant committed the acts rose beyond a mere suspicion. See Gwinn, 366 Ill. App. 3d at 515. Accordingly, it was not improper for the other-crimes evidence to be admitted against the defendant. See Gwinn, 366 Ill. App. 3d at 515.

B. Propriety of Trial Court's Sua Sponte Consideration of Other-Crimes Evidence

Having determined that it was not improper for the trial court to consider the other-crimes evidence, we next consider whether the way the trial court considered that evidence was improper. The record reveals that, prior to the trial court's ruling on the defendant's motion for a directed finding, the Village did not ask the trial court to consider the defendant's acts on October 7 and 9 to demonstrate that he intended to commit a crime on September 18, 2006. Rather, the trial court indicated that it would, sua sponte, consider the other crimes as evidence that the defendant intended to commit a crime on September 18, 2006. The defendant argues that the trial court's action was improper because it demonstrates that the trial court ceased to be impartial and instead assumed the role of advocate for the prosecution.

At the outset, we note that at oral argument the Village argued that the defendant had waived this contention because he did not object at trial. We agree that the defendant has not properly preserved this issue for our review. See People v. Enoch, 122 Ill. 2d 176, 187 (1988) (arguments not raised at trial or in a posttrial motion are waived for review). Nonetheless, we elect to consider the defendant's contention under the plain-error rule pursuant to Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)). "The plain error [rule] may be invoked in a criminal case to review an error that has not been properly preserved if either the evidence was closely balanced or the error was of such magnitude that the defendant was denied a fair trial." People v. Hindson, 301 Ill. App. 3d 466, 473-74 (1998). Here, because the defendant claims that the trial court improperly acted as an advocate on the State's behalf, the defendant's right to a fair trial is at issue, and we will therefore consider the merits of his contention under the plain-error doctrine. See People v. Phuong, 287 Ill. App. 3d 988, 993 (1997) (when a judge displays signs of bias against the defendant, the system ceases to function as it properly should, resulting in plain error and requiring reversal).

"[I]t is generally never improper for a judge to aid in bringing out the truth in a fair and impartial manner, although no inflexible rule can be applied in such matters." People v. Kuntz, 239 Ill. App. 3d 587, 591 (1993).

> " 'It is the judge's duty to see that justice is done, and where justice is liable to fail because a certain fact has not been developed or a certain line of inquiry has not been pursued it is his duty to interpose and either by suggestions to counsel or an examination conducted by himself avoid the miscarriage of justice, but in so doing he must not forget the function of the judge and assume that of the advocate.' " People v. Franceschini, 20 Ill. 2d 126, 132 (1960), quoting People v. Lurie, 276 Ill. 630, 641 (1917).

"It is an abuse of discretion for a trial judge to assume the role of an advocate." People v. Smith, 299 Ill. App. 3d 1056, 1064 (1998).

Our research reveals that no Illinois case has addressed the precise issue that we are confronted with in this case. However, several Illinois cases have addressed whether the trial court "crossed the line" between serving as an impartial judge and serving as an advocate for the State. In Kuntz, the defendant filed a petition to rescind his summary suspension. At the hearing on the petition, after the presentation of all of the evidence, defense counsel argued for a finding in the defendant's favor based on the State's failure to present evidence that the Breathalyzer machine was working properly. In response, the State's Attorney chose to rely on his evidence, stating, " 'I have nothing beyond that.' " Kuntz, 239 Ill. App. 3d at 592. The trial court then asked the State if it " 'want[ed] time to bring in the log books.' " Kuntz, 239 Ill. App. 3d at 590. The defendant objected, but the court granted a continuance, and it allowed the State to reopen its case and present additional evidence the following day. The judgment was reversed on appeal. The court held that "the trial

judge impermissibly acted as an advocate when he prompted the State to seek a continuance and present additional evidence." Kuntz, 239 Ill. App. 3d at 592. The court stated: "It is clear that but for the court's intervention, the State would have failed to rebut the defendant's prima facie case and the petition to rescind summary suspension would had to have been granted." Kuntz, 239 Ill. App. 3d at 592.

In People v. Hicks, 183 Ill. App. 3d 636 (1989), at the completion of an evidentiary hearing on a motion to suppress, the trial judge instructed the parties to present evidence on the issue of inevitable discovery. Hicks, 183 Ill. App. 3d at 641. The trial judge raised the issue of inevitable discovery sua sponte. Hicks, 183 Ill. App. 3d at 641. After the parties presented additional evidence, the trial judge found that the State had sustained its burden of proving inevitable discovery, and he denied the motion to suppress. Hicks, 183 Ill. App. 3d at 641-42. The reviewing court held that, in sua sponte raising the inevitable discovery issue, the trial judge had not abandoned his role as a judge and become an advocate. Hicks, 183 Ill. App. 3d at 646. The reviewing court explained that the trial judge merely raised the issue and gave both parties ample opportunity to address it. Hicks, 183 Ill. App. 3d at 646. The reviewing court concluded that the trial judge had properly fulfilled his duty to see that justice was done. Hicks, 183 Ill. App. 3d at 646.

In In re R.S., 117 Ill. App. 3d 698 (1983), R.S. was adjudicated delinquent based on his commission of a burglary. At the dispositional hearing, the trial judge called as a witness an individual who was not listed as a witness for the State in its discovery answer. The trial judge knew that, during a previous court appearance on charges against him, the individual had admitted his involvement in the burglary. The judge believed that the individual knew R.S. was a participant and thought that it was unusual that he was not being called as a witness. The individual ultimately

admitted that R.S. was an accomplice. The reviewing court held that "the trial judge exceeded the bounds of judicial discretion by calling [the individual] to testify. *** Although the judge asked only one question of [the individual], the response incriminated the minor. The judge helped establish the State's case against the minor. *** In this case the judge took on the role of prosecutor." R.S., 117 Ill. App. 3d at 704-05.

In People v. Walter, 90 Ill. App. 3d 687 (1980), after the prosecutor had completed his examination of a witness, the trial judge asked him whether he still needed to have the witness give testimony establishing venue and identification of the defendant. Walter, 90 Ill. App. 3d at 688. The prosecutor then presented testimony identifying the defendant as the offender and establishing venue. Walter, 90 Ill. App. 3d at 688. On appeal, the reviewing court held that the trial judge's conduct had not been improper. Walter, 90 Ill. App. 3d at 689. After noting the trial judge's obligation to see that justice was done, the reviewing court stated that the trial judge had simply acted to see that evidence essential to a proper disposition of the case was not inadvertently omitted. Walter, 90 Ill. App. 3d at 688-89; see also People v. Costello, 95 Ill. App. 3d 680, 686 (1981) (noting that a trial judge may question a witness to elicit the truth or to enlighten material issues that seem obscure).

In Kuntz and R.S., the reviewing courts determined that the trial court had "crossed the line" in serving as an advocate for the State. We believe that the facts in those cases are more egregious than those we are confronted with here. In this case, there is no issue of the trial court calling a witness whom the State itself did not seem to know existed. Cf. R.S., 117 Ill. App. 3d at 704-05. Moreover, as we will discuss in more detail below, the defendant could have been convicted even without the trial court's direct intervention. Cf. Kuntz, 239 Ill. App. 3d at 592.

In <u>Hicks</u> and <u>Walter</u>, the reviewing courts determined that the trial courts had not "crossed the line" in serving as an advocate for the State. We believe that the facts in those cases are less egregious than those presented in the instant case. In each of those cases, the trial court raised questions as to the evidence that had been admitted. See <u>Hicks</u>, 183 Ill. App. 3d at 641; <u>Walter</u>, 90 Ill. App. 3d at 688. Following the questions, the State presented additional evidence. See <u>Hicks</u>, 183 Ill. App. 3d at 641-42; <u>Walter</u>, 90 Ill. App. 3d at 688. Conversely, in the case here, the trial court did not raise any questions as to the admissibility of the other-crimes evidence or provide the Village with an opportunity to argue why that evidence should be considered. Rather, the trial court indicated, without requesting any input from the Village, that it would be considering the other crimes as evidence that the defendant intended to commit a similar crime on September 18, 2006.

We believe that the trial court's conduct here created the appearance that it was working in tandem with the Village to prosecute the defendant. Not only is it important that the trial court avoid explicitly acting as an advocate for the prosecution, it is equally important that the trial court avoid appearing as if it is advocating on behalf of the prosecution. The right to procedural due process entitles a person to an impartial and disinterested tribunal. <u>Marshall v. Jerrico, Inc.</u>, 446 U.S. 238, 242, 64 L. Ed. 2d 182, 188, 100 S. Ct. 1610, 1613 (1980). This disinterested tribunal "preserves both the appearance and reality of fairness, 'generating the feeling, so important to a popular government, that justice has been done.' " <u>Marshall</u>, 446 U.S. at 242, 64 L. Ed. at 188, 100 S. Ct. at 1613,quoting <u>Joint Anti-Fascist Refugee Committee v. McGrath</u>, 341 U.S. 123, 172, 95 L. Ed. 817, 854, 71 S. Ct. 624, 649 (1951) (Frankfurter, J., concurring); see also <u>J.E.B. v. Alabama ex rel. T.B.</u>, 511 U.S. 127, 161 n.3, 128 L. Ed. 2d 89, 117 n.3, 114 S. Ct. 1419, 1438 n.3 (1994) (Scalia, J., dissenting, joined by Rehnquist, C.J,. And Thomas, J.) ("Wise observers have long understood that the appearance of

justice is as important as its reality"); see generally 155 Ill. 2d R. 62 (a judge should avoid impropriety and the appearance of impropriety in all of the judge's activities).

In People v. Lang, 346 Ill. App. 3d 677 (2004), this court recently discussed this exact rule of law. In Lang, a Lake County assistant State's Attorney followed the defendant until he observed the defendant commit a crime. Lang, 346 Ill. App. 3d at 678-79. Charges were then filed against the defendant, based on the assistant State's Attorney's observations. Lang, 346 Ill. App. 3d at 679. At a jury trial, the assistant State's Attorney was questioned by another assistant State's Attorney about the defendant's alleged criminal conduct. Lang, 346 Ill. App. 3d at 679. This questioning led to the testimony that was the basis for the defendant's conviction. Lang, 346 Ill. App. 3d at 679. On appeal, the defendant argued that the trial court erred in denying his motion to appoint a special prosecutor where the complainant and key eyewitness for the State was an assistant State's Attorney closely involved in the prosecution of the case. Lang, 346 Ill. App. 3d at 679. We reversed the defendant's conviction and remanded for a new trial, determining that the facts created an improper appearance that the State was too involved with the underlying case to be fair in its prosecution of the defendant. Lang, 346 Ill. App. 3d at 684. We concluded that a special prosecutor should have been appointed so as not to risk diminishing the public's esteem and confidence in the criminal justice system. Lang, 346 Ill. App. 3d at 684.

Here, as in Lang, an appearance of impropriety undermined the perceived fairness of the defendant's trial. In Lang, the appearance developed when the State's Attorney's office served in two capacities at the defendant's trial: as prosecutor and as primary witness. It was not improper for an assistant State's Attorney to serve as the primary witness; however, the integrity of the criminal

justice system was undermined when the State's Attorney's office prosecuted the defendant. See Lang, 346 Ill. App. 3d at 684.

In the instant case, as explained earlier, it was not improper for the trial court to consider the other-crimes evidence. However, the trial court should have considered that evidence only upon the Village's motion to do so. See Hicks, 183 Ill. App. 3d at 641-42; Walter, 90 Ill. App. 3d at 688. The trial court created the appearance that it was assisting in the prosecution of the defendant by admitting the other-crimes evidence without seeking the Village's input and allowing defense counsel to respond to the Village's arguments. As such an appearance is improper, we must reverse the defendant's conviction.

Relying on People v. Enoch, 189 Ill. App. 3d 535 (1989), the Village argues that, even if we find that the trial court erred in sua sponte admitting the evidence, reversal is not warranted, because "the court's conduct did not play a material role in defendant's conviction." We disagree. Based on the circumstances of this case, we do not believe that the defendant was required to demonstrate how he was prejudiced. See Chapman v. California, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967) (an impartial tribunal is so basic to a fair trial that its infraction can never be treated as harmless error). An appearance that the trial court was working in tandem with the Village to convict the defendant is reason alone to reverse the defendant's conviction. See Lang, 346 Ill. App. 3d at 684-85; see also People v. Courtney, 288 Ill. App. 3d 1025, 1033 (1997) (requiring appointment of special prosecutor even though no demonstration of actual prejudice to defendant was shown).

Furthermore, even if it were appropriate to consider whether the defendant would have been convicted absent the other-crimes evidence, we could not say that he would have been convicted anyway, because the evidence against him was not overwhelming. The Village's evidence

established that on September 18, 2006, at approximately 11:30 a.m., Filley and McAuley were in their vehicles at an intersection, having a conversation. The defendant drove his vehicle in their direction. They thought the defendant was going to strike their vehicles, but he pulled his vehicle away at the last minute, leaving the road to avoid striking them. As we noted, absent the other-crimes evidence establishing the defendant's intent, his conduct as alleged does not necessarily imply willful or wanton disregard for the safety of Filley and McAuley. See 625 ILCS 5/11--503(a)(1) (West 2006).

## C. Sufficiency of the Evidence

Having determined that the defendant's conviction must be reversed, we must now address his third contention, as to the sufficiency of the evidence, to determine whether this cause may be remanded for a new trial. The defendant argues that, based on the circumstances, his driving was within the standard of care expected of a reasonable person. The defendant further contends that he presented unimpeached alibi evidence that demonstrates he was not in the area when, according to the complainant's testimony, the incident occurred.

When viewed in the light most favorable to the prosecution, the evidence introduced at trial was sufficient to support a finding of guilt beyond a reasonable doubt. See People v. Collins, 106 Ill. 2d 237, 261 (1985). To establish the defendant's guilt, the prosecution was obligated to show that the defendant drove his "vehicle with a willful and wanton disregard for the safety of persons or property." 625 ILCS 5/11--503(a)(1) (West 2006). In this case, the prosecution presented evidence reflecting that the defendant drove his vehicle in the direction of Filley's and McAuley's stopped vehicles and then pulled his vehicle off the roadway to avoid striking them. Both Filley and McAuley believed that the defendant was going to strike their vehicles. Two other witnesses

testified that, on separate occasions, the defendant had committed similar acts and had caused them to drive off the road. See People v. Olivera, 164 Ill. 2d 382, 393 (1995) ("for purposes of double jeopardy all evidence submitted at the original trial may be considered when determining the sufficiency of the evidence"). From such evidence, the trial court could have concluded beyond a reasonable doubt that defendant drove his vehicle with a willful and wanton disregard for the safety of persons or property. Although the defendant presented alibi evidence, the trial court clearly found that such evidence was not credible. See Tuell, 97 Ill. App. 3d at 851 (noting that trial court is in the best position to judge credibility of the witnesses). Even assuming the authenticity of defendant's September 18 lunch receipt with a time stamp of 12:14 p.m., this evidence did not preclude the trial court from concluding beyond a reasonable doubt that the defendant was present at the crime scene at 11:30 a.m., as the complainants testified. Accordingly, as the evidence was sufficient to prove the defendant guilty of the charged offense beyond a reasonable doubt, the defendant will not be subjected to double jeopardy by a retrial. See People v. Taylor, 76 Ill. 2d 289, 309 (1979).

### III. Conclusion

For the foregoing reasons, the judgment of the circuit court of Lake County is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

CALLUM, J., concurs.

JUSTICE HUTCHINSON, dissenting:

I would affirm defendant's conviction and thus I respectfully dissent. I disagree with the majority's conclusion that the trial court abused its discretion in considering the testimony from the two dismissed cases as other-crimes evidence in the remaining case. In taking this action, the trial

court did not become an advocate on behalf of the prosecution but instead simply commented upon the evidence before it and gave defendant the opportunity to present rebutting evidence, which he did. The evidence on the other charges was introduced as part of an agreed-upon single trial and was properly before the court to consider. The trial court was not precluded from considering the evidence in a different light simply because the prosecution did not request it to do so. See Hicks, 183 Ill. App. 3d at 646. Here, the trial court found that the evidence from the other two reckless driving cases was other-crimes evidence relevant to establish defendant's intent and motive in the remaining case. As in Hicks and Walter, I do not believe that the trial court abandoned its role as judge in considering the evidence in this manner.

Furthermore, unlike in Kuntz and R.S., the trial court's actions in this case did not result in the introduction of evidence not already before it. The evidence presented regarding the October cases had already been introduced prior to the trial court's ruling, as part of an agreed-upon single trial. Thus, the evidence of defendant's conduct was already before the trial court to consider, and the trial court did not have to take the affirmative step of admitting the evidence sua sponte. Instead, the trial court in the present case merely commented upon the evidence that had already been introduced at trial, and it reminded defendant that he was entitled to present any rebutting evidence. I do not believe that such a comment reflected that the trial court abandoned its role as judge and became an advocate for the prosecution.

Notably, defendant offers no support for his assertion in his appellate brief that, although the cases were tried together, "it was understood that each case would be considered separate and distinct from one another." If the parties had, in fact, reached such an agreement, it is not contained within the record. Instead, the bystander's report simply indicates that the parties agreed that the trial court

"would hear all three cases together." Therefore, based upon my review of the record, it is apparent that the trial court conducted a single trial of all three cases. See People v. Lopez, 367 Ill. App. 3d 817, 819 (2006) (noting that appellant has burden of providing sufficiently complete record to support claims of error and that any doubts that may arise from the incompleteness of the record will be resolved against appellant). By agreeing to a single trial on all of the cases, defendant cannot now complain that the trial court heard evidence of defendant's conduct in the other cases. See People v. Gresham, 104 Ill. App. 3d 81, 87 (1982) (holding that defendant's failure to file a motion to sever waives objection to single trial on multiple charges).

Finally, I disagree with the majority's conclusion that we are presented with circumstances similar to those present in Lang. In addition to the obvious factual distinctions between this case and Lang, I do not believe that this case presents the same policy concerns that were addressed in Lang. Specifically, I do not believe that the trial court's conduct "undermined the perceived fairness of the defendant's trial." Slip op. at 14. In sua sponte considering the testimony from the two dismissed cases as other-crimes evidence, the trial court did not help the prosecution establish its case. Instead, the trial court's sua sponte statements on how it intended to consider the evidence already before it were appropriate in fulfilling its role to see that justice was done. Accordingly, for all of these reasons, I do not believe that the trial court's conduct constituted an abuse of discretion. Therefore, I would affirm defendant's conviction.