2019 IL App (1st) 162341

FIRST DISTRICT
SIXTH DIVISION
October 18, 2019

No. 1-16-2341

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 5903 |
| | ) | |
| WALTER ROSS, | ) | Honorable |
| | ) | Michael B. McHale, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Connors concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a bench trial, defendant Walter Ross was convicted of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2014)) and sentenced to seven years' imprisonment. On appeal, defendant argues that his conviction should be reversed and remanded for a suppression hearing, because his trial counsel was ineffective for failing to reinstate a motion to suppress defendant's statement to the police. For the following reasons, we affirm.

¶ 2                                  JURISDICTION

¶ 3    Defendant was sentenced on July 29, 2016. He filed his notice of appeal on the same day. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 (eff. Feb. 6,

2013) and 606 (eff. Dec. 11, 2014), governing appeals from a final judgment of conviction in a criminal case entered below.

¶ 4                                    BACKGROUND

¶ 5    Defendant was charged with one count of being an armed habitual criminal, two counts of unlawful use or possession of a weapon by a felon, and 15 counts of aggravated unlawful use of a weapon, arising from defendant's possession of a firearm on March 31, 2015. Defendant was tried only on the armed habitual criminal count.

¶ 6    Prior to trial, defendant filed a motion to suppress statements he made to the arresting officers, alleging the statements were made during custodial interrogation and the arresting officers did not advise defendant of his *Miranda* rights prior to questioning. See *Miranda v. Arizona*, 384 U.S. 436 (1966). After filing the motion, defendant retained new counsel, who subsequently withdrew the motion.

¶ 7    At trial, Chicago police officer Antrinius Andrews testified that on March 31, 2015, he and his partner, Officer Jose Rivera, were driving in Chicago and observed a dark green conversion van with a broken taillight. They activated their vehicle's emergency equipment and followed the van, which did not stop. The spotlights on the police vehicle illuminated the inside of the van. Andrews saw the driver and passenger making "furtive" and "unusual" movements with their shoulders, which Andrews demonstrated by "ben[ding] over with his shoulders going down towards—in a frontwards manner reaching towards *** the floor area of his feet area." The police vehicle was a sport utility vehicle, so the officers were elevated and could see into the back window of the van.

¶ 8 While the van was still "in drive" and moving, both the driver and passenger jumped out, and the van ran into a parked car. After calling on the radio for assistance, Andrews gave chase to the driver, Demarko Jones, and caught him in an alley approximately 30 yards from the squad car. Andrews had not seen any occupants in the van besides Jones and the passenger.

¶ 9 Once Andrews returned to the van with Jones in custody, he performed a systematic search in the van area where he had seen Jones and the passenger "making movements towards the floor." Andrews found a fully loaded silver revolver under the front passenger seat of the van and a semiautomatic black handgun under the driver's seat. Andrews did not need to move any items or debris under the passenger seat of the van in order to find the revolver. After Andrews searched the van, Rivera returned with the passenger, whom Andrews identified in court as defendant. Andrews identified the revolver that he found under the passenger seat and the five rounds inside the revolver. These items were subsequently admitted into evidence.

¶ 10 On cross-examination, Andrews said that he was no more than 10 to 15 feet away from the van when he saw the furtive movements. It was dark outside, and as he had been trained to do, he used the spotlight to "light up" the van to see what was inside. He acknowledged that he was not able to see whether defendant had anything in his hands. Andrews did not see Rivera take defendant into custody and was not present when defendant made any statements. The two guns were not submitted for fingerprint or DNA analysis. Andrews also found cannabis inside the van. On redirect examination, Andrews testified that cannabis was recovered from the floor by the driver's side of the van.

¶ 11 Rivera testified that he was driving the vehicle with Andrews on May 31, 2015, just before 8 p.m., when he noticed a conversion van with a broken taillight. As driver, Rivera

activated the emergency lights and siren to initiate a traffic stop. The van continued driving, and Rivera noticed the occupants of the van making movements toward the floorboard, ducking down and "moving stuff around." Rivera could not see what was in the passenger's hands at the time.

¶ 12     Rivera witnessed the driver and passenger jump out of the van as it was traveling approximately 10 to 15 miles per hour. Rivera identified defendant in court as the passenger of the vehicle. While Andrews chased the driver, Rivera chased defendant. Rivera never lost sight of defendant and chased him approximately half a block before he caught up to him and placed him into custody. Defendant yelled, "I don't know nothing about them guns." Rivera then brought defendant back to the van, where Andrews showed Rivera two guns and marijuana. Rivera identified the gun that Andrews found in the van under the front passenger seat.

¶ 13     On cross-examination, Rivera acknowledged that his chase of defendant lasted approximately 15 seconds before defendant "stopped and gave up." Rivera handcuffed defendant, and told him "I know why you guys are running." At that point, defendant stated he knew "nothing about the guns." Rivera acknowledged that he did not know why defendant was running. He did not write in his police report that he told defendant he knew why he was running, nor did he tell Andrews that defendant made a statement. Subsequently, when defendant was placed under arrest, Rivera read him his *Miranda* rights, after which defendant did not say anything else. On redirect examination, Rivera testified that, while he did not include his statement to defendant in his police report, he did include defendant's statement.

¶ 14     The parties stipulated that, if called to testify, Chicago police officer Daniel Linser would testify he was monitoring the radio on March 31, 2015, when he responded to an emergency call

regarding the van. When he arrived at the location, he observed a green van that had crashed, but no occupants were inside. No police officers or civilians were at the scene. Linser guarded the vehicle until Andrews and Rivera returned. The parties also stipulated that defendant had prior convictions for criminal drug conspiracy and manufacture and delivery of a controlled substance.

¶ 15    The court denied defendant's motion for a directed finding. Defendant then testified that on March 31, 2015, he finished work at 6 p.m. and left to spend time with a friend. After receiving a text message from his manager, defendant decided to return to his workplace. Jones drove up in his van and told defendant he was "heading back [defendant's] way," so defendant got in the passenger seat.

¶ 16    As Jones was driving, they were "pulled over" by the police. At that point, Jones "pulled something off his hip and placed it under the seat." It looked like a gun. Jones then "hopped out" of the van and ran. Defendant did the same but only ran across the street because, once he realized it was a police officer running after him, he stopped, as he only had marijuana on him at the time.

¶ 17    The police officer handcuffed defendant, placed him in the police vehicle, and searched the van. After the search, he asked defendant whether he "kn[ew] anything about the gun," and defendant responded that he "didn't know anything about no guns." Defendant did not know there were guns in the van and had never been in the van before.

¶ 18    On cross-examination, defendant acknowledged that, as Jones began driving him back to his workplace, the van was pulled over by the police. Defendant knew it was the police as soon as they activated the blue lights and spotlights on the side of the car. Defendant saw Jones take a gun off his hip and throw it under the driver's seat but never saw him put anything underneath

the passenger seat. When the police pulled the van over, defendant had marijuana but "tossed it" toward Jones in the van once he heard the police siren. When defendant ran from the van, he already knew he was being chased by police because he heard the police siren. Defendant acknowledged that he ran from the vehicle even though he believed he was not doing anything illegal, did not know about the guns in the van, and did not have any warrants for his arrest.

¶ 19    After placing defendant into custody and returning him to the car, the officers searched the van. They asked defendant if he knew about the guns. He was in the back seat of the police car at the time the officer asked this question. Defendant denied that he knew about the guns or that he made a statement, stating "none of that happened."

¶ 20    In rebuttal, the State asked that defendant's 2005 conviction for criminal drug conspiracy be used in consideration of defendant's credibility.

¶ 21    The trial court found defendant guilty of being an armed habitual criminal. The court did not find the police officers' testimony impeached by any variations or inconsistencies in their testimonies. Rather, the court found their testimony describing the movements they saw to be "credible and consistent" and indicating "sincerity," noting the officers were sitting "up higher" than the people in the van and they had their spotlights shining into the back of the van. The court found the circumstantial evidence "very strong," given the movements the police observed and the size of the gun found on the passenger side. The court also found defendant not credible. The court emphasized that defendant "couldn't even keep his own story straight on the stand," noting that defendant said he stopped once he learned his pursuer was a police officer but also said he knew before exiting the van that they were police officers because of the sound of the

police sirens. The court found that defendant's flight showed consciousness of guilt and his statement given to the officer "work[ed] against him."

¶ 22    Defendant filed a motion for a new trial, which the court denied. The trial court sentenced defendant to seven years' imprisonment. The court stated that it would not give him the minimum sentence of six years' imprisonment because defendant was driving around with a "huge" and "gigantic" handgun with five live rounds in it when he knew he was not supposed to have any gun. The court subsequently denied defendant's motion to reconsider sentence.

¶ 23                                    ANALYSIS

¶ 24    Defendant argues on appeal that this court should reverse his conviction and remand for a suppression hearing, where his trial counsel was ineffective for failing to reinstate the motion to suppress defendant's statement to Rivera. He contends that once counsel heard Rivera's testimony, which demonstrated that Rivera illegally elicited defendant's statement while he was in custody but had not been given *Miranda* warnings, counsel should have reinstated the motion.

¶ 25    We review claims of ineffective assistance of counsel using the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Manning*, 241 Ill. 2d 319, 326 (2011). To establish a claim of ineffective assistance of counsel, a defendant must demonstrate both that (1) counsel's performance was objectively unreasonable under prevailing professional norms and (2) the deficient performance prejudiced defendant. *People v. Veach*, 2017 IL 120649, ¶ 30. A defendant must satisfy both prongs of the *Strickland* test to prevail on his ineffective assistance of counsel claim. *Id.*

¶ 26    With respect to the first prong, courts have ruled that counsel's decision regarding whether to file a motion to suppress is generally a matter of trial strategy, which is afforded great

deference. *People v. Bew*, 228 Ill. 2d 122, 128 (2008). In order to establish prejudice under the second prong, "the defendant must demonstrate that the unargued suppression motion is meritorious, and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed." *People v. Henderson*, 2013 IL 114040, ¶ 15. We review claims of ineffective assistance of counsel *de novo*. *People v. Demus*, 2016 IL App (1st) 140420, ¶ 21.

¶ 27    Under *Miranda v. Arizona*, 384 U.S. at 476-77, an individual who is subjected to custodial interrogation must be informed of certain rights before any questioning. "Interrogation" refers to both express questioning and to words and actions on the part of the police "that the police should know are reasonably likely to elicit an incriminating response from [a] suspect." (Internal quotation marks omitted.) *People v. Jackson*, 374 Ill. App. 3d 93, 106 (2007). The focus should be on defendant's perceptions, rather than the intent of the officers. *Id.* at 107.

¶ 28    Defendant contends that the unargued motion to suppress his statement to Rivera that he knew nothing about "them guns" would have been successful because, at the time defendant made the statement, he was in custody and Rivera had not given him the required *Miranda* warnings. The parties agree that defendant was in custody when he made his statement to Rivera. However, they disagree on whether he was subjected to interrogation. Defendant argues he was subjected to interrogation when Rivera said "I know why you guys are running," because the comment was designed to elicit an incriminating response from defendant. The State responds that the "simple" comment was not interrogation and nothing suggests that defendant perceived the comment as the functional equivalent of interrogation. The State contends that, even if

defendant felt inclined to respond to the comment, this does not mean he was coerced to incriminate himself, such that *Miranda*'s safeguards apply.

¶ 29    We find that defendant was not subjected to "interrogation" requiring the suppression of his statement. Rivera's comment to defendant was "purely informational" because Rivera did not ask defendant any questions and the comment did not seek or require a response from defendant. See *People v. Jones*, 337 Ill. App. 3d 546, 552-53 (2003) (finding police officer's statement to the defendant that he found a handgun in the defendant's car was "purely informational" and not interrogative, because it did not seek or require any response from defendant). As the United States Supreme Court explained in *Rhode Island v. Innis*, 446 U.S. 291, 303 (1980), although a police officer's comment may "str[ike] a responsive chord" with a defendant, "subtle compulsion" is not interrogation unless it can be established "that a suspect's incriminating response was the product of words or actions on the part of the police that they should have known were reasonably likely to elicit an incriminating response."

¶ 30    Rivera's comment that he knew why defendant was running was informational and did not require a response from defendant. We find nothing to suggest that Rivera should have known that telling defendant he knew why defendant was running would elicit an incriminating response. Consequently, defendant was not subjected to "interrogation," and defendant's motion to suppress would not have succeeded.

¶ 31    Furthermore, even if the trial court had granted the motion to suppress defendant's statement, it would not have affected the outcome of the trial. In order to prove defendant guilty of being an armed habitual criminal, the State needed to establish that he possessed the revolver found under his seat. 720 ILCS 5/24-1.7(a) (West 2014); see *People v. Ross*, 407 Ill. App. 3d

931, 935 (2011). In order to establish that defendant constructively possessed the firearm, the State must prove "(1) that defendant had knowledge of the presence of the weapon; and (2) that defendant exercised immediate and exclusive control over the area when the weapon was found." *Ross*, 407 Ill. App. 3d at 935. Control over the location where the weapon was found gives rise to an inference that defendant possessed the weapon. *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003). "Evidence of constructive possession is 'often entirely circumstantial.' " *Id.* (quoting *People v. McLaurin*, 331 Ill. App. 3d 498, 502 (2002)).

¶ 32   The police officers observed defendant making furtive bending movements toward the floor of the van where he was sitting, and the revolver was found under his seat. The revolver found under his seat was large and not covered by anything. The trial court found the officers' testimony credible, and we defer to that determination. See *People v. Brown*, 2013 IL 114196, ¶ 48. From this evidence, a rational trier of fact could conclude that, when defendant heard the police sirens, he bent down and hid the revolver under his seat, thus demonstrating his knowledge and control over the firearm. Defendant's flight from police also demonstrates consciousness of guilt. See *People v. Hart*, 214 Ill. 2d 490, 519 (2005). Even without defendant's statement, the evidence was sufficient to support his conviction.

¶ 33   The record shows that defendant's statement was not the only factor the trial court considered in convicting defendant. While the court found defendant's statement "work[ed] against him," it relied on the police officers' credible testimony regarding the furtive movements they witnessed defendant make in the passenger seat, the size of the gun found under that seat, and defendant's flight from the police demonstrating his consciousness of guilt. Given the evidence against defendant, it is pure speculation that suppression of the statement would have

- 10 -

affected the outcome of the trial. "*Strickland* requires actual prejudice be shown, not mere speculation as to prejudice." *Bew*, 228 Ill. 2d at 135. Defendant cannot make that showing here.

¶ 34     Accordingly, as defendant has not established the prejudice prong of the *Strickland* test, his claim that trial counsel was ineffective for failing to reinstate his motion to suppress at trial must fail.

¶ 35     For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 36     Affirmed.

---

**No. 1-16-2341**

---

| | |
|---|---|
| **Cite as:** | *People v. Ross*, 2019 IL App (1st) 162341 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 15-CR-5903; the Hon. Michael B. McHale, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Ashlee Patterson, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Douglas P. Harvath, Assistant State's Attorneys, of counsel), for the People. |

---