2014 IL App (1st) 082747-B

SIXTH DIVISION
June 20, 2014

No. 1-08-2747

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 05 CR 28199 |
| | ) | |
| MARTELL MIMES, | ) | Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Hall concurred in the judgment and opinion.

**OPINION**

¶1    Following a bench trial, defendant Martell Mimes was convicted of attempted first degree murder, aggravated battery with a firearm, and two counts of aggravated unlawful use of a weapon (AUUW).   He was sentenced to concurrent terms of 45 years in prison for attempted murder, 10 years for aggravated battery with a firearm, and 3 years for AUUW.

¶2    On appeal, he contends:   (1) the trial judge improperly assumed the role of prosecutor; (2) the trial court improperly increased defendant's sentence for attempted murder where the State did not charge the sentence enhancing facts in the indictment; (3) defendant's sentence for attempted murder was excessive; (4) his convictions for aggravated battery with a firearm and two counts of AUUW violated the one-act, one-crime rule; (5) his convictions under the AUUW statute should be vacated because the criminalization of carrying a firearm on one's person in public violates the constitutional guarantees of the right to bear arms; and (6) the trial court erroneously imposed

various fines, fees and costs against him. After this court filed its opinion in this case (*People v. Mimes*, 2011 IL App (1st) 082747), the Illinois Supreme Court issued a supervisory order instructing us to vacate our judgment and reconsider our prior decision in light of *People v. Aguilar*, 2013 IL 112116. *People v. Mimes*, No. 112728 (Jan. 29, 2014) (supervisory order).

¶3    For the reasons that follow, we hold that (1) the trial judge did not improperly assume the role of prosecutor by considering other-crimes evidence against defendant for the limited purpose of identification; (2) defendant received sufficient notice prior to trial of alleged facts that increased the penalty range of his attempted murder conviction where he was not prejudiced in the preparation of his defense; (3) the trial court's 45-year sentence for attempted first degree murder was not an abuse of discretion; (4) defendant's convictions for attempted first degree murder and one count of AUUW did not violate the one-act, one-crime rule, but this rule was violated by his convictions for aggravated battery with a firearm and a second count of AUUW; (5) defendant's conviction for carrying an uncased, loaded and accessible firearm on a public city street is reversed because the relevant provisions of Illinois's AUUW statute violated the constitutional protection of the right to bear arms; and (6) the trial court properly assessed defendant with the $50 court system fee, but the other challenged fees or fines are vacated or offset by his time spent in custody.

¶4                         I.   BACKGROUND

¶5    Defendant was arrested and charged with the November 8, 2005 attempted first degree murder and aggravated battery with a firearm of the 17-year-old victim, Lenard Richardson. Defendant was also charged with eight counts of AUUW based on allegations that he was carrying an uncased, loaded and accessible firearm in public and did not have a firearm owner's identification (FOID) card, was under 21 years of age, and was involved in street gang activity.

¶6     At the bench trial in August 2008, the testimony of Richardson and his older brother, Leonard Cole, established that Richardson was selling heroin in a Chicago public housing building on the evening in question when he was robbed by defendant and three other offenders. Defendant brandished a silver pistol, took Richardson's bundle of narcotics and about $200, and hit Richardson in his jaw with the pistol.   Richardson then telephoned Cole, who drove to the scene with another friend.   When Cole arrived at the scene, he told Richardson to wait in the car and he (Cole) would "handle it."   Cole and his friend walked across the street to a second public housing building and spoke with Lavane Tanksley.   After a minute, Richardson lost sight of Cole, got out of the car, and went inside the second building.

¶7     Richardson went upstairs, looked out a window and saw Cole talking to Tanksley. Richardson then went downstairs to the lobby.   As he was by the door and about to exit the building, he saw defendant, who was outside and about three feet away.   Defendant walked toward Richardson and was carrying a silver pistol.   Defendant started shooting as he walked up the steps to enter the building, and continued shooting as he walked into the lobby, passed Richardson and ran up a staircase.   When Richardson heard the initial gunshots, he dropped to the ground and heard more gunshots fired.   Only Richardson and defendant were in the lobby. Richardson did not have a gun.   Richardson sustained two gunshot wounds fired into his back. Cole also heard the gunshots, dropped to the ground and then saw that someone was lying inside the lobby with his feet sticking out the door.   Cole went into the lobby and saw that the victim was Richardson.   No one else was in the lobby.   Cole remained with Richardson until the police arrived.

¶8     Richardson was taken to the hospital and briefly interviewed by the police.   Although Richardson initially denied selling drugs at the scene, he subsequently told the police about the

events leading up to the shooting, gave a description of the shooter, and said he thought the shooter used a gun that belonged to Tanksley. The police spoke with Tanksley and obtained defendant's name. One day after the shooting, Richardson identified defendant as the shooter from a photo array. As a result of the shooting, Richardson suffered a spinal cord injury and was paralyzed from the waist down. Thereafter, he was confined to a wheelchair and had to wear a colostomy bag and diaper. Furthermore, both his legs were subsequently amputated.

¶9 The State's evidence established that police recovered at the scene three shell casings and a full cartridge outside the building on the steps leading up to the lobby door. Inside the lobby, the police recovered five more shell casings and several pieces of metal from expended bullets. All eight shell casings were fired from the same gun.

¶10 Later, defendant was arrested and advised of his *Miranda* rights. According to the testimony of Chicago police detective Chris Matias, defendant initially told the police that he was inside his sister's apartment the entire day when the offense occurred. Later, however, defendant told the police that he used Tanksley's gun to shoot Richardson because he thought Richardson was reaching for a handgun. After the shooting, defendant ran upstairs to his sister's apartment. Furthermore, defendant told the police that he never saw a gun in Richardson's hands. Defendant did not testify at the bench trial.

¶11 After closing arguments, the trial judge stated that he considered the other-crimes evidence, *i.e.*, the testimony that defendant robbed Richardson at gunpoint and struck him with the gun, only for the purpose of identification. The trial court concluded that any prejudicial effect was outweighed by the probative value of that evidence, which was relevant to show Richardson's prior opportunity to observe defendant and then identify him later as the shooter. The trial court stated that Richardson was a credible witness and the physical evidence corroborated his version

of the events. The trial court also stated that Detective Matias's testimony concerning defendant's inculpatory admissions to the shooting was credible.

¶12 The trial court found defendant guilty of attempted first degree murder, aggravated battery with a firearm, and two counts of AUUW. Specifically, defendant's AUUW convictions were based on findings that he (1) knowingly carried on his person an uncased, loaded and accessible firearm while not on his own land or in his own abode or fixed place of business (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2004)), and (2) possessed an uncased, loaded and accessible firearm upon public land (720 ILCS 5/24-1.6(a)(2), (a)(3)(A) (West 2004)). The trial court found defendant not guilty on six other counts of AUUW because the State failed to prove he was involved in gang-related activity, did not have a FOID card or was under 21 years of age.

¶13 At the sentencing hearing, the parties stipulated that two Chicago police officers would testify that they arrested defendant in September 2005 in the hallway of a building where he did not live for being in possession of 23 small clear plastic bags containing crack cocaine. Moreover, the State presented Richardson's victim impact statement and informed the court that defendant was out on bond for the 2005 possession of a controlled substance case when he shot and severely injured Richardson. Furthermore, defendant had a prior juvenile adjudication of guilt for burglary but no prior adult convictions.

¶14 For the offense of attempted first degree murder, the trial court imposed a 20-year sentence plus the minimum mandatory addition of 25 years for a cumulative 45-year sentence based on the finding that defendant was the shooter in the case and caused great bodily harm to the victim. Defendant also received concurrent sentences of 10 years for aggravated battery with a firearm, and three years each for two counts of AUUW. The trial court also assessed $840 for various costs, fees and fines. Defendant timely appealed.

¶ 15                              II.   ANALYSIS

¶ 16     On appeal, defendant contends:   (1) the trial court improperly assumed the role of prosecutor when it *sua sponte* considered other-crimes evidence; (2) the trial court improperly added 25 years to his 20-year attempted murder sentence where the State did not charge the sentence enhancing facts in the indictment; (3) defendant's 45-year sentence for attempted murder was excessive; (4) pursuant to the one-act, one-crime rule, his convictions for aggravated battery with a firearm and two counts of AUUW should be vacated because they were based on the same physical act as his attempted murder conviction; (5) his convictions under the AUUW statute should be vacated because the criminalization of openly carrying a firearm on one's person in public violates the constitutional guarantees of the right to bear arms; and (6) the trial court erroneously imposed various fines, fees and costs against him.

¶ 17                          A.   Appearance of Partiality

¶ 18     Defendant argues the trial court erred when, after closing argument, it stated, *sua sponte*, that certain testimony, *i.e.*, that defendant robbed Richardson at gunpoint and hit him in the jaw with the gun, was relevant only to show Richardson's ability to identify defendant as the offender who shot him later the same day.   The trial court also stated that the probative value of this other-crimes evidence outweighed any prejudicial effect.   Defendant acknowledges that all the testimony concerning the armed robbery was admitted during the bench trial without any objection from defendant.   Nevertheless, defendant contends that the trial court's statements established that it impermissibly acted as a prosecutor because the State never raised the issue of the admissibility of the other-crimes evidence.   We find that defendant's argument lacks merit.

¶ 19     A trial judge abuses his discretion when he abandons his judicial role and adopts the role of prosecutor.   *People v. Hicks*, 183 Ill. App. 3d 636, 646 (1989).   However, where justice is liable

to fail because a certain fact has not been developed or a certain line of inquiry has not been pursued, a judge has a duty to interpose and avoid the miscarriage of justice either by suggestions to counsel or an examination conducted by the judge himself. *People v. Franceschini*, 20 Ill. 2d 126, 132 (1960).

¶20    Here, the trial judge did not improperly act as a prosecutor when he merely clarified, prior to announcing his findings, that he had considered the properly admitted testimony about the robbery, which constituted other-crimes evidence, only for the relevant purpose of identification. Specifically, defendant's prior bad act afforded Richardson the opportunity to observe defendant and the gun up close and thereby assisted Richardson in identifying defendant as the offender who shot him later that day.

¶21    This situation is dissimilar to that in *Village of Kildeer v. Munyer*, 384 Ill. App. 3d 251 (2008), relied upon by defendant, where defendant Munyer was charged with reckless driving in three separate cases. Although the three cases involved different witnesses from three separate incidents that occurred on different dates, the trial court heard the three cases together. *Id.* at 252. In the first and second cases, the witnesses testified that the defendant drove his vehicle toward the witnesses' vehicles and then swerved into the witnesses' path, causing the witnesses to leave the road to avoid being hit. *Id.* at 252-53. In the third case, the defendant drove toward two stopped cars, causing the occupants to think the defendant would strike them before he pulled his vehicle away at the last minute. *Id*. at 253. After the prosecution had rested, the trial court granted the defendant a directed finding in the first and second cases based on the failure of the complaints to give sufficient factual descriptions of the alleged acts. *Id*. Then, the trial court improperly acted as a prosecutor when it *sua sponte* took the affirmative step of admitting the testimony from the two dismissed reckless driving cases as other-crimes evidence in the remaining reckless driving

case in order to establish proof of the defendant's willful or wanton mental state. *Id*. at 253, 257.

¶22 In this case, the trial judge did not prompt the State to present the other-crimes evidence, and the State did not reopen its case to present additional evidence. Instead, the judge merely commented on the relevant basis for the previously admitted other-crimes evidence. Furthermore, the defense never argued that the testimony concerning the robbery constituted inadmissible other-crimes evidence. Defendant cannot credibly complain on appeal that he was prejudiced by the admission of that evidence where the defense referred to that testimony extensively during the cross-examinations of Richardson and Cole in order to discredit them as drug peddlers. Defendant fails to establish any appearance of partiality or abuse of discretion by the trial judge here.

¶23    B.    Mandatory Addition to Defendant's Attempted Murder Sentence

¶24 Defendant contends that the addition of 25 years to his 20-year sentence for attempted first degree murder is void because the State violated section 111-3(c-5) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/111-3(c-5) (West 2004)). According to defendant, section 111-3(c-5) required the State to give him written notice prior to trial that it would seek an enhanced sentence based on the facts that he personally discharged a firearm which caused great bodily harm to Richardson. Defendant acknowledges that he failed to raise this issue both prior to sentencing and in his motion to reconsider the sentence. He argues, however, that a void order may be challenged at any time and a "sentence which does not conform to a statutory requirement is void." *People v. Arna*, 168 Ill. 2d 107, 113 (1995).

¶25 Alternatively, defendant seeks review of this issue under the plain error rule, arguing that the imposition of an unauthorized sentence affected substantial rights where the State's alleged indictment error prevented him from exercising his right to request a bifurcated proceeding.

Specifically, defendant contends that if he had known the State would seek an enhanced sentence based on his use of a firearm and causing the victim great bodily harm, then defendant could have requested a bifurcated proceeding where a jury would decide his guilt but a judge would decide whether the enhancing factor existed. Furthermore, defendant could then have chosen to testify either at the guilt phase of the trial only, or the enhancing factor phase only, or neither or both. See Ill. S. Ct. R. 451(g) (eff. July 1, 2006) (when the State seeks an enhanced sentence, trial courts have discretion under section 111-3(c-5) in deciding whether to conduct unitary or bifurcated trials on the issue of guilt and on the issue of whether a sentencing enhancement factor exists).

¶26 Because this issue involves a question of law, our review is *de novo*. *People v. Rowell*, 229 Ill. 2d 82, 92 (2008). A defendant has a fundamental right to be informed of the nature and cause of criminal accusations made against him. *Id*. at 92-93. The legislature enacted section 111-3(c-5) of the Code in response to the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which held that whenever a fact other than a prior conviction is considered to enhance a penalty beyond the statutory maximum, that fact must be found to exist beyond a reasonable doubt by the trier of fact. *People v. Crutchfield*, 353 Ill. App. 3d 1014, 1023 (2004).

¶27 Section 111-3(c-5) provides:

"Notwithstanding any other provision of law, *** if an alleged fact (other than the fact of a prior conviction ) is not an element of an offense but is sought to be used to increase the range of penalties for the offense beyond the statutory maximum that could otherwise be imposed for the offense, the alleged fact must be included in the charging instrument or otherwise provided to the defendant through a written notification before trial, submitted to a trier of fact as an aggravating factor, and proved beyond a reasonable doubt. Failure to prove the fact beyond a reasonable

doubt is not a bar to a conviction for commission of the offense, but is a bar to increasing, based on that fact, the range of penalties for the offense beyond the statutory maximum that could otherwise be imposed for that offense." 725 ILCS 5/111-3(c-5) (West 2004).

Defendant's challenge on appeal is limited to the issue of notice; he does not assert that the alleged facts that he fired the gun that caused Richardson great bodily harm were neither submitted to the fact finder nor proven beyond a reasonable doubt.

¶28 Attempted first degree murder is a Class X felony (720 ILCS 5/8-4(c)(1) (West 2004)) and is usually subject to a sentencing range of 6 to 30 years' imprisonment (720 ILCS 5/8-4(c)(2) (West 2004); 730 ILCS 5/5-8-1(a)(3) (West 2004)). However, if the offense involved certain factors, a mandatory number of years must be added to the term of imprisonment imposed by the court. For example, if the defendant personally discharged a firearm, then 20 years must be added to the term of imprisonment imposed by the court. 720 ILCS 5/8-4(c)(1)(C) (West 2004). If the defendant personally discharged a firearm that proximately caused, *inter alia*, great bodily harm to another person, then 25 years or up to a term of natural life must be added to the term of imprisonment imposed by the court. 720 ILCS 5/8-4(c)(1)(D) (West 2004).

¶29 Although the term *great bodily harm* is not susceptible of a precise legal definition, it requires an injury of a greater and more serious character than an ordinary battery. *People v. Figures*, 216 Ill. App. 3d 398, 401 (1991). Bodily harm as it relates to ordinary battery requires "some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent." *People v. Mays*, 91 Ill. 2d 251, 256 (1982). Great bodily harm is not dependent upon hospitalization of the victim, nor the permanency of his disability or disfigurement but, rather, centers upon the injuries the victim did, in fact, receive. *Figures*, 216

Ill. App. 3d at 401.

¶30    Here, the indictment alleged that defendant

"committed the offense of attempt first degree murder in that he, without lawful

justification, with intent to kill, did any act, to wit:   shot Lenard Richardson about

the body with a firearm, which constituted a substantial step towards the

commission of the offense of first degree murder, in violation of Chapter 720, Act

5, Section 8-4(a) (720-5\9-1(a)(1)), of the Illinois Compiled Statutes."

¶31    We find that the plain language of the indictment clearly set forth the alleged fact that

defendant personally discharged the firearm.   In addition, the indictment cited both the attempt

and first degree murder statutes. Consequently, defendant could look to subsection (c)(1)(C) of the

cited attempt statute to know that he was subject to a mandatory 20-year addition to his sentence

based upon a finding that he personally discharged the gun.

¶32    We agree with defendant, however, that the indictment failed to include the alleged fact

that defendant's shooting proximately caused Richardson great bodily harm.   Although the

indictment sufficiently alleged that defendant wounded Richardson, a gunshot wound does not

necessarily satisfy the great bodily harm requirement.   See *People v. Ruiz*, 312 Ill. App. 3d 49,

62-63 (2000) (gunshot wound to the police officer's knee was not a severe bodily injury where the

wound was barely visible on the day of the incident and the officer did not immediately seek

medical treatment); *People v. Durham*, 303 Ill. App. 3d 763, 770 (1999) (battery victim's gunshot

injury, which required no medical attention and was described as a mark, small nick or a cut, was

not a severe bodily injury for sentencing purposes).

¶33    The timing of a challenge to the sufficiency of an indictment is significant because it

determines which standard must be applied in reviewing the sufficiency of the indictment on

appeal. *People v. Davis*, 217 Ill. 2d 472, 478 (2005); *People v. Cuadrado*, 214 Ill. 2d 79, 86-87 (2005). An indictment challenged before trial must strictly comply with the pleading requirements of section 111-3. *People v. Nash*, 173 Ill. 2d 423, 429 (1996). In contrast, when an indictment is attacked for the first time posttrial, a defendant must show that he was prejudiced in the preparation of his defense. *Davis*, 217 Ill. 2d at 479. "[W]hen the sufficiency of an indictment *** is attacked for the first time on appeal, the indictment is sufficient if it apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and to allow him to plead a resulting conviction as a bar to future prosecutions arising from the same conduct." *Rowell*, 229 Ill. 2d at 93. Because defendant challenged the indictment for the first time on appeal, the State's failure to strictly comply with section 111-3(c-5) is not dispositive. Instead, the dispositive issue is whether defendant was prejudiced in the preparation of his defense.

¶34 To show prejudice, defendant argues that he might have requested a bifurcated hearing under Supreme Court Rule 451(g) if he had received written notice prior to trial that the State intended to show he caused great bodily harm to the victim. Even assuming, *arguendo*, that the trial court would have granted a request for a bifurcated proceeding under the circumstances present here, the record refutes defendant's claim that he was prejudiced in the preparation of his defense. Specifically, the record establishes that defendant was apprised of the serious nature of Richardson's injuries long before defendant submitted his August 18, 2008 written waiver of his right to a jury trial. The November 19, 2005 arrest report stated that defendant was "identified as the individual who shot and seriously wounded victim (Richardson, Lenard) with a handgun." Furthermore, at defendant's March 9, 2006 bond hearing, the State asked the court to maintain the "no bond hold" where defendant was out on bond for a case involving drug possession and then "commits this crime, where he ends up shooting the victim in the back on this attempt murder

- 12 -

case."

¶35    In addition, at the September 19, 2006 hearing on defendant's motion to reduce bail, the State, in the presence of defendant, informed the court of his criminal history and said that the

"facts of this case are such that he was identified as having shot at the victim on

November 8, 2005 at approximately 7:00 o'clock in the evening in the Ickes Homes

at 2400 South State Street.   The victim was shot twice in the back, shot at more

than half a dozen times.   The victim was left paralyzed."

Defense counsel responded, in part, that "in regards to the facts of the case it does appear that the victim, although a set of tragic circumstances have resulted in him being paralyzed in regards to the matter."

¶36    The record establishes that defendant cannot credibly argue that he was not informed prior to trial of the facts concerning the great bodily harm Richardson sustained as a result of the shooting.   At the very least, defendant knew that Richardson was paralyzed as a result of the two gunshots defendant fired into Richardson's back.   Moreover, the indictment apprised defendant of the offense charged–attempted first degree murder–and cited both the attempt and first degree murder statutes.   Consequently, defendant was able to look to subsection (c)(1)(D) of the cited attempt statute to find the missing sentence enhancing factor.   *Cf. Rowell*, 229 Ill. 2d at 95-96 (where the State aggregated the defendant's small retail thefts but failed to allege the necessary element of a single intent or design, and the charging instrument cited the retail theft statute but did not reference the statute concerning the joinder of offenses, then the defendant suffered prejudice because he could not look to the cited statute to find the missing element).   Specifically, subsection (c)(1)(D) informed defendant that he could receive an enhanced sentence of 25 years or up to natural life for personally discharging the firearm that caused Richardson great bodily harm.

¶37    We find that defendant cannot establish that the omission of the words "proximately caused great bodily harm" in the indictment prejudiced his preparation of his defense. Accordingly, his enhanced sentence is not subject to reversal or reduction because the indictment in this case apprised him of the proper elements of the offense with sufficient specificity to allow him to prepare his defense.   Consequently, defendant's sentence is not void where he received sufficient pretrial notice of the attempted murder offense charged and his sentence conformed to the statutory requirement of 111-3(c-5) because the State proved beyond a reasonable doubt that defendant fired the gun that caused Richardson great bodily harm.

¶38    Finally, the plain language of section 111-3(c-5) refutes defendant's claim that he was entitled to specific, written, pretrial notice that the State would seek an enhanced sentence. Section 111-3(c-5) clearly states that the defendant is entitled to written pretrial notice of the *alleged fact* that would be used to increase his sentence.   There is no requirement that the defendant must also be given written pretrial notice about the potential increased sentence he could receive.

¶39                              C.   Sentence and Abuse of Discretion

¶40    Defendant complains that his 45-year sentence for attempted murder is excessive. Specifically, he argues that the trial court failed to properly account for his rehabilitative potential where he was 19 years old at the time of the offense in 2005, had little criminal history, maintained employment until 2004 when his employer became ill, had a supportive family and hoped to continue his education.

¶41    The trial court has broad discretionary powers in choosing the appropriate sentence. *People v. Jones*, 168 Ill. 2d 367, 373 (1995).   A judgment as to the proper sentence must be based on the circumstances of each case and depends on many factors, including the seriousness of the

offense; the need to protect the public and provide for deterrence and retribution; and the defendant's demeanor, general moral character, mental capacity, age, background, prior criminal history, rehabilitative potential and future dangerousness. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000); *People v. Thompson*, 222 Ill. 2d 1, 35 (2006); *People v. Hunzicker*, 308 Ill. App. 3d 961, 966 (1999). A reviewing court gives great deference to a trial court's sentencing decision and cannot substitute its judgment for that of the trial court simply because it would have weighed the factors differently. *People v. Alexander*, 239 Ill. 2d 205, 212-13 (2010) (reversing the appellate court to reinstate the trial court's 24-year sentence for the 15-year-old defendant convicted of firing a gun at a fellow student in a crowded hallway while school was in session without injuring anyone).

¶42　Here, defendant received a 45-year sentence, which was based upon 20 years for attempted first degree murder (720 ILCS 5/8-4(c)(1) (West 2004); 730 ILCS 5/5-8-1(a)(3) (West 2004) (this Class X felony is subject to 6 to 30 years in prison)), plus the minimum mandatory consecutive addition of 25 years where he personally discharged a firearm that proximately caused great bodily harm to another person (720 ILCS 5/8-4(c)(1)(D) (West 2004)). His 45-year sentence is well within the statutory range of 31 to 55 years and up to natural life.

¶43　In addition, the trial court properly considered significant aggravating factors. Defendant approached the 17-year-old, unarmed victim and began firing multiple gunshots from a distance of only two or three feet away. Moreover, the victim's injuries were permanent and devastating. In addition, defendant, who was only 19 years old at the time of this offense, was out on bond for a charge of possession of a controlled substance (see *People v. Williams*, 262 Ill. App. 3d 734, 746 (1994)), and already had a juvenile adjudication of guilt for a burglary offense. Furthermore, defendant presents no evidence to indicate that the trial court failed to consider any mitigation

factors, like defendant's age, family support or rehabilitative potential. See *People v. Morgan*, 306 Ill. App. 3d 616, 633 (1999); *People v. Garcia*, 296 Ill. App. 3d 769, 781 (1998). Consequently, defendant has failed to establish that the trial court abused its discretion in sentencing defendant to 45 years' imprisonment for his attempted first degree murder offense.

¶44                                    D.   One-Act, One-Crime Rule

¶45     The one-act, one-crime rule prohibits multiple convictions when (1) the convictions are carved from precisely the same physical act, or (2) one of the offenses is a lesser-included offense of the other. *People v. Lindsey*, 324 Ill. App. 3d 193, 200 (2001). The term "act" is defined as "any overt or outward manifestation which will support a different offense." *People v. King*, 66 Ill. 2d 551, 566 (1977). If the court determines that the defendant committed multiple acts, it must then determine whether any of the offenses are lesser-included offenses. *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). If so, multiple convictions are improper; if not, multiple convictions may be entered. *Id.* We review *de novo* defendant's claim that his convictions violated the one-act, one-crime rule. *People v. Dryden*, 363 Ill. App. 3d 447, 453 (2006).

¶46     Defendant asserts, the State concedes, and we agree that defendant's conviction for aggravated battery with a firearm violates the one-act, one-crime rule because it was predicated on the same act as his attempted murder conviction. Because the two relevant counts of the indictment charged defendant with the same physical act, *i.e.*, shooting the victim with a firearm, the lesser felony, aggravated battery with a firearm, must be vacated. See *People v. Aquino*, 239 Ill. App. 3d 12, 19 (1992) (vacating the defendant's conviction for aggravated battery with a firearm where the defendant was also charged and convicted of attempted first degree murder based on the same physical act of shooting his wife). Therefore, we vacate his conviction for aggravated battery with a firearm and the corresponding 10-year concurrent sentence.

¶47    Further, defendant asserts, the State concedes, and we agree that defendant's two convictions for AUUW stem from the same physical act of carrying an uncased, loaded and accessible firearm in public and, thus, violate the one-act, one-crime rule.   *People v. Quinones*, 362 Ill. App. 3d 385, 396-97 (2005).   Therefore, we vacate one of his AUUW convictions and the corresponding three-year concurrent sentence.

¶48    Defendant also claims that his remaining AUUW conviction violates the one-act, one-crime rule.   We do not address this claim because our resolution of the constitutionality of his AUUW conviction disposes of this claim.

¶49                              E.   Constitutionality of AUUW Statute

¶50    Defendant argues that his AUUW conviction should be reversed because the relevant provisions of the AUUW statute criminalize the open carrying of a loaded firearm on one's person on a public street and, thus, violate both state and federal constitutional guarantees of the right to bear arms.   Section 24-1.6 of the AUUW statute provides in pertinent part:

" (a) A person commits the offense of [AUUW] when he or

she knowingly:

(1) Carries on or about his or her person *** except

when on his or her land or in his or her abode or fixed place

of business any pistol, revolver *** or other firearm; or

(2) Carries or possesses on or about his or her

person, upon any *** public lands within the corporate

limits of a city, village or incorporated town, *** except

when on his or her own land or in his or her own abode or

fixed place of business, any pistol, revolver *** or other

firearm; and

(3) One of the following factors is present:

(A) the firearm possessed was uncased,

loaded and immediately accessible at the time of the

offense[.]

\* \* \*

(d) Sentence. Aggravated unlawful use of a weapon is a

Class 4 felony; a second or subsequent offense is a Class 2 felony.

Aggravated unlawful use of a weapon by a person who has been

previously convicted of a felony in this State or another jurisdiction

is a Class 2 felony. " 720 ILCS 5/24-1.6(a)(1), (a)(2), (a)(3)(A), (d)

(West 2004).

¶51    The *Aguilar* court held that the Class 4 form of section 24-1.6(a)(1), (a)(3)(A), (d)

violated the second amendment right to keep and bear arms and, therefore, the court reversed the

defendant's conviction for AUUW under that section. *Aguilar*, 2013 IL 112116, ¶ 22.

¶52    In this case, the record on appeal establishes defendant was convicted of the Class 4 form

of section 24-1.6(a)(1), (a)(3)(A), (d) of the AUUW statute. Accordingly, in light of our supreme

court's decision in *Aguilar*, the conviction in this case must be reversed. *Aguilar*, 2013 IL

112116, ¶ 22.

¶53                                    F.    Fines, Fees and Costs

¶54    Finally, defendant challenges the trial court's imposition of various fines, fees and costs.

The State concedes and we agree that the following fees or fines should be vacated as a matter of

law:    a $25 court supervision fee (625 ILCS 5/16-104c (West 2006)); a $5 drug court fee (55 ILCS

5/5-1101(f) (West 2006)); a $30 Children's Advocacy Center fine (55 ILCS 5/5-1101(f-5) (West 2008)); and a $100 trauma fund fine (730 ILCS 5/5-9-1.10 (West 2004)). Accordingly, we vacate these charges, which total $160.

¶55 In addition, defendant asserts, the State concedes, and we agree that defendant is entitled to receive credit for time served in presentence custody to satisfy his $10 mental health court fine and $5 youth diversion/peer court fine. Because defendant accrued at least 1,040 days of credit for time he spent in presentence custody (725 ILCS 5/110-14(a) (West 2004)), he is entitled to at least $5,200 credit against any creditable fines. The $10 mental health court and $5 youth diversion/peer court fines are the only creditable fines in this case. See *People v. Jones*, 223 Ill. 2d 569, 582 (2006) (fines are part of the punishment for a conviction, whereas fees are intended to reimburse the State for a cost incurred in the defendant's prosecution). Consequently, we offset defendant's $10 mental health court and $5 youth diversion/peer court fines with his days of accrued presentence credit.

¶56 We do not agree, however, with defendant's claim that the trial court erroneously imposed the $50 court system fee. This fee was properly assessed against defendant because he was found guilty of felony offenses. 55 ILCS 5/5-1101(c) (West 2004). The trial court's order, however, erroneously states that this fee was imposed under section 5-1101(b) of the Counties Code (55 ILCS 5/5-1101(b) (West 2008)), which is not applicable here. Consequently, we correct that portion of the trial court's order to reflect the imposition of the fee under section 5-1101(c) of the Counties Code.

¶57                                III.   CONCLUSION

¶58 Accordingly, we affirm defendant's attempted first degree murder conviction and the sentence imposed on that conviction. We vacate, however, his convictions and sentences for the

aggravated battery with a firearm offense and one of his convictions and sentence for the AUUW offense.   We reverse his second conviction and sentence for AUUW.   We also affirm the imposition of the $50 court system fee, vacate the imposition of the other challenged fees totaling $160, and offset the fines totaling $15 with accrued presentence credit.

¶59    Affirmed in part, reversed in part and vacated in part.